

**SIGNED this 13 day of March, 2012.**

_____
**John T. Laney, III
Chief United States Bankruptcy Judge**

IN THE UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | CASE NO.: 10-71843- JTL |
| JOHNY BROWN & | ) | |
| KYLEE BROWN, | ) | |
| | ) | |
| Debtors. | ) | CHAPTER 7 |
| _____ | ) | |
| | ) | |
| WILSON FAMILY FOODS, INC., | ) | |
| DION GRIFFIS, & WILSON GRIFFIS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | ADVERSARY PROCEEDING |
| | ) | NO 11-07001-JTL |
| JOHNY BROWN & | ) | |
| KYLEE BROWN, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**Memorandum Opinion**

This matter comes before the Court on the plaintiffs' Motion to Amend Complaint. The hearing on the motion took place on February 3, 2012. At the conclusion of the hearing, the Court gave the defendants six days to either answer or oppose the amended complaint. The defendants filed a response with opposition, and the plaintiffs filed a brief in support of their motion. For the reasons set forth below, the Court will grant the motion to amend.

**Background**

Defendant Johny Brown and plaintiffs Dion Griffis and Wilson Griffis are family members and shareholders of Wilson Family Foods, and defendant Kylee Brown is Johny Brown's wife. In their original complaint and first amended complaint, the plaintiffs allege that Mr. Brown misappropriated $2,100,000.00 from a construction loan to Wilson Family Foods, and the plaintiffs further allege and that Mr. Brown and Mrs. Brown used this money for their own benefit. This adversary proceeding seeks to except this debt from dischargeability under 11 U.S.C. §§ 523(a)(2)(A), 523(a)(4), and 523(a)(6).

The original complaint named Mrs. Brown as a defendant but did not assert any specific allegations against her. On May 31, 2011, Mrs. Brown moved to dismiss the claims against her, and the plaintiffs subsequently moved to amend the complaint to add allegations against her. Pursuant to a memorandum opinion and order dated August 04, 2011 (docket nos. 42 and 43), the Court granted in part and denied in part the motion to amend. The plaintiffs filed that amended complaint on January 25, 2012, and on that same day, the plaintiffs filed a second Motion to Amend Complaint currently at issue.

The original and first-amended complaints assert the same allegations against Mr. Brown. They allege that draws on the Wilson Family Foods construction loan required Heritage Bank loan officer approval and that Mr. Brown had a scheme of bypassing the loan officer, approving the draws himself, and then moving the money from the corporate construction account to his personal account. The plaintiffs allege Mr. Brown was able to do this through his positions as president of Wilson Family Foods and vice-president of Heritage Bank, violating his fiduciary duties in the process. The amount of the debt claimed to be nondischargeable is $2,100,000.00, which includes the money allegedly diverted to personal use and funds plaintiffs needed to further borrow to finish the construction project.

The second-amended complaint—the one at issue—seeks to add allegations that Mr. Brown forged Dion Griffis's and Wilson Griffis's signatures to personal guaranty agreements and a deed to secure debt, creating approximately $800,000 in obligations for the plaintiffs. The proposed amendments allege that Mr. Brown did this to get extra funding for the construction project and ultimately to cover up his prior misappropriations. The proposed amendments further allege that Mr. Brown also diverted these funds to his personal account. It is unclear from the proposed amendments whether these additional funds were originally meant for Wilson Family Foods or whether the loan was personal to Mr. Brown (i.e., it is unclear whether Mr. Brown got a personal loan, put those funds into the Wilson Family Foods corporate account on his own initiative to cover his tracks, and subsequently transferred the funds to his personal account). It is also unclear whether the guaranties are personal to Dion Griffis and Wilson Griffis or whether their signatures were made in their corporate capacity to bind

Wilson Family Foods (i.e., the amendments refer to "personal guaranty agreements" but also state that these alleged actions created further debt for Wilson Family Foods).[1] What is clear is that these extra loan funds are not in addition to the relief asked for in the original and first-amended complaint; the relief asked for is still the nondischargeability of $2,100,000.00.

The plaintiffs' counsel found out about the forgery allegations at a November 10, 2011, deposition. Both the plaintiffs and defendants (and defendants' counsel) knew about these allegations long before the deposition—the plaintiffs were aware but apparently forgot to tell their attorney, and the defendants knew about the allegations because the forgery allegations were the subject of a criminal investigation. The defendants' attorney has apparently known about the allegations since he began representing the defendants. At the November deposition, the plaintiffs' counsel took the opportunity to question Mr. Brown about the forgery allegations after counsel became aware of the allegations. The defendants' counsel, however, questioned neither the plaintiffs nor the defendants on the allegations, and the defendants' counsel has not conducted any discovery on the allegations since the November deposition. At the deposition, the plaintiffs' counsel made known her intention to raise the allegations in this adversary proceeding.

Defendants object to the motion to amend as untimely, as resulting in further delay, and as causing further deposition expenses. The plaintiffs are amenable to

---

[1] The distinction can be important because an unauthorized signature generally cannot bind a party (and thus a forged guaranty on a personal loan would not obligate Dion and Wilson Griffis) but an unauthorized signature can bind the person whose name was signed under apparent agency principles (thus Mr. Brown, as president of Wilson Family Foods, might be able to bind Wilson Family Foods by signing the names of other officers). Technically, if a signature made without permission is made by one with apparent authority to sign for others, the signature is not considered an "unauthorized signature," See, e.g., U.C.C. § 1-201(43); O.C.G.A. § 11-3-403 (and accompanying comments), but the signature can still create liability for the signer to the individuals whose names are signed.

extending the time for discovery, and the plaintiffs dispute that the motion will result in more expenses in that the defendants' counsel had ample opportunity to depose both the defendants and the plaintiffs at the November deposition. The plaintiffs further argue that allowing the amendment would result in no other prejudice because the allegations are not a surprise.

## Conclusions of Law

It is undisputed that the time to amend pleadings as a matter of right has long passed. Federal Rule of Civil Procedure 15(a)(2), applicable to adversary proceedings through Bankruptcy Rule 7015, states that if a party cannot amend as a matter of right, the party can amend only with the opposing party's consent or by leave of the court, and "[t]he court should freely give leave when justice so requires." Refusing to grant leave without any apparent reason is an abuse of discretion. Foman v. Davis, 371 U.S. 178, 182 (1962). Circumstances that might lead a court to deny a motion to amend are "undue delay, bad faith or dilatory motive on the part of the movants, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment." Id. Under Rule 15(c)(1)(B), and amendment relates back to the date of the original pleading when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."

The defendants argue that the amendment would cause delay, would create more discovery expenses, and is otherwise untimely. The defendants cite only to Rule 15(c). They neither discuss nor cite to any cases demonstrating that the delay and expense caused by allowing this amendment would be undue or prejudicial, and they do not assert

any facts demonstrating bad faith. The defendants do not dispute that they were aware of these allegations and of the plaintiffs' intent to bring the allegations up in this adversary proceeding. They do not dispute that their counsel could have deposed the plaintiffs or the defendants themselves at the November deposition or anytime afterward, and they give no justification why their counsel did not take advantage of the opportunity to explore the forgery issue. They do not give any facts showing that discovery on this matter will create costs they would not have had if the allegations were in the original complaint. Simply put, the defendants have not put forth any facts or legal arguments showing undue delay or expense.

The defendants' objection to the motion's timeliness raises the issue that any amendments would be futile because they would not relate back to the date of the original complaint. Again, the defendants cite only to Rule 15 and assert that they "firmly believe" the motion is untimely. They do not cite any legal authority showing how these amendments raise the issue of relation-back. The Court is not entirely convinced that the amendments *need* to relate back to the original filing date. The issue of relation-back is important only insofar as amendments add a new claim that would be time-barred if the amendment did not relate back to the original filing date. The amendments at issue can be read merely to add detail to the fraudulent scheme or amplify the details of the defendants' conduct without adding a new claim. There is a difference between amendments adding a new claim and amendments merely adding detail supporting existing claims. This is explicit in the text of Rule 15(c)(1)(B)—the rule states that an amendment relates back when "the amendment asserts a *claim* … that arose out of the conduct, transaction, or occurrence" described in the original pleading. This distinction

is also seen in case law. See, e.g., Moore v. Baker, 989 F.2d 1129, 1131 (11th Cir. 1993) ("The critical issue in Rule 15(c) determinations is whether the original complaint gave notice to the defendant of the *claim* now being asserted.") (emphasis added); Slayton v. American Express Co., 460 F.3d 215, 228 (2nd Cir. 2006) ("Where the amended complaint does not allege a new claim but renders prior allegations more definite and precise, relation back occurs."); Stevelman v. Alias Research Inc., 174 F.3d 79, 87 (2nd Cir. 1999) ("Where no new cause of action is alleged, as here, this Court liberally grants relation back under Rule 15(c)."); Guerrero v. RJM Acquisitions LLC, 499 F.3d 926, 933 (9th Cir. 2007) (distinguishing between amendments adding a new cause of action and amendments adding specific facts to conduct identified in the original complaint).

Although some of the cases cited above speak in terms of the specifying amendments "relating back" to the original filing, it is more precise to treat such amendments solely under Rule 15(a). Adding facts to a pleading that do not support a new claim does not require relation back, but alleging new facts late in the game raises issues of notice, further discovery, and the expenses involved in moving backwards in a trial, and such an amendment can unduly prejudice a defendant who has formulated a defense based on the facts alleged up to that point. As explained above, the defendants in this case have not offered an argument why the Court should deny the motion to amend based on Rule 15(a).

On the other hand, the amendments arguably can construed as adding another claim for relief, despite the prayer for relief being the same amount as in the original pleading. In the plaintiffs' Reply Brief in Support of Plaintiff's Motion Seeking Leave to Amend Complaint, the plaintiffs state that the amendments are "merely additional factual

allegations," but in their original Memorandum in Support of Plaintiffs' Motion Seeking Leave to Amend Complaint, the plaintiffs refer to the amendments as "form[ing] an independent basis to recover a portion of the overall debt." If the plaintiffs wish to assert an independent fraud claim, Rule 15(c) is implicated, and the Court must determine whether the claim is untimely, and if so, whether it relates back to the date of the original pleading.

The Plaintiffs argue that the Georgia statute of limitations for fraud is four years from discovery of the fraud and that the amendment is well within that limitations period even ignoring tolling issues. However, the correct limitations period for complaints to determine nondischargeability is sixty days after the first date set for the meeting of creditors. FED. R. BANKR. P. 4007(c). The date to file such complaints, as extended by the Court, was January 20, 2011, which was over a year ago, and thus any new claims are untimely.

The next question is whether the new claim relates back to the date of original filing as arising "out of the conduct, transaction, occurrence set out—or attempted to be set out—in the original pleading." The Court concedes that, at first blush, this is a difficult call. The forgery allegations are of an entirely different quality than the conduct alleged in the original complaint. The original complaint alleges Mr. Brown diverted funds already (and properly) acquired by Wilson Family Foods, whereas the amended complaint wishes to add allegations of improperly acquiring loan funds through forgery and only then improperly diverting them. The forgery allegations are a distinct set of factual allegations, and "even where an amended complaint tracks the legal theory of the first complaint, claims that are based on an 'entirely distinct set' of factual allegations

will not relate back." Slayton, 460 F.3d at 228 (quoting Nettis v. Levitt, 241 F.3d 186, 193 (2nd Cir. 2001)).

This case nicely illustrates why there is no mechanical formula in deciding what constitutes the same conduct, transaction, or occurrence. See 6A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE § 1497 (3rd ed. 2010) ("Fortunately, the majority of courts have refused to use [mechanical] approaches in a wooden fashion."). Although any new claim would be based on allegations not found in the original pleading, the Court concludes that, insofar as the complaint can be read to raise a new claim, the new claim arises out of the same conduct set out or attempted to be set out in the original complaint. While there is no formula to decides Rule 15(c) matters, there are factors courts look at to help simplify matters: "would a judgment on the claim set forth in either pleading bar an independent action on the other; will the same evidence support both the original and amended pleadings; is the measure of damages the same in each case; will the new allegation deprive the other party of some substantive defense that existed to the earlier pleading; and is the same measure or burden of proof required." Id. These factors weigh heavily in favor of the original claims and any new claims arising out of the same conduct. A judgment on the original claim for $2,100,000.00 would necessarily bar a subsequent claim for a portion of that amount; the same evidence will support both pleadings because the plaintiffs will have to show that Wilson Family Foods actually had possession of $2,100,000.00 for Mr. Brown to divert (moreover, forgery could be strong evidence of a guilty mind and an attempt to cover up misconduct); the new claim does not increase the amount of damages; the defendants deny any fraudulent activity and thus the forgery

allegations will not prejudice any defense they already assert; and there is no change in the burden of proof.

The evidence issue is the most compelling to the Court. The original complaint alleges improper diversion of $2,100,000.00 from Wilson Family Foods accounts that were supposed to be used for a construction loan, and the amended complaint does not waver from that basic allegation—it merely clarifies how the money came into Wilson Family Food's accounts. The plaintiffs claim an extra $800,000 in loans came into their possession without their knowledge or consent, and evidence will have to establish where this money came from, how it got there, and where it went.

This evidentiary matter also highlights why the relation-back issue is ultimately irrelevant. Even if the Court were to find that a new claim in the amended pleadings does not relate back, the plaintiffs would still be able to introduce evidence of the forgeries. As stated above, the forgery evidence is relevant to many issues and highly probative of a guilty mind and a fraudulent scheme. That the allegations are not in the original pleadings, by itself, would not be a ground to exclude the evidence. Both parties were aware of the allegations long before this motion, and plaintiffs' counsel became aware of the allegations during discovery—information that both parties are aware of and information that comes out in discovery is fair game at trial if relevant.

The Court finds no apparent reason to deny the motion to amend, and the Court would thus be abusing its discretion if it ruled for the defendants.

## Conclusion

The Court will grant the motion to amend. An order in accordance with this memorandum opinion will be entered.